TALLEY v. BAILEY. (No. 508.)*

(Court. of Civil Appeals of Texas. El Paso.
Dec. 16, 1915.)

1. TRIAL ☞244—INSTRUCTION EMPHASIZING
ISSUE.

In a suit to determine a boundary line tried under stipulation that the only issue was whether an agreed line had been established between the parties' predecessors, where plaintiff's evidence tended to show that such an agreement had been made, but defendant's tended to show that the erection of a fence by the predecessors had been merely to establish some boundary for blocking purposes and had been without intention permanently to locate the boundary, and the court charged generally as to what was necessary to constitute an agreement, while a special charge made the agreement have reference to the specific point of difference, such specific charge was not erroneous as giving undue prominence to the issue of the agreement, in view of the difference between plaintiff's and defendant's evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 577–581; Dec. Dig. ☞244.]

2. APPEAL AND ERROR ☞1064 — HARMLESS
ERROR—INSTRUCTION.

In a suit to determine a boundary, error of the court, after charging generally as to what was necessary to constitute an agreement, in specifically making the "agreement" have reference to the concrete point of difference in the evidence whether the agreed boundary line between the parties' predecessors had been fixed temporarily or permanently, thus unduly emphasizing the issue, was not such error as amounted to such a denial of plaintiff's right as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment, thus justifying reversal under Rule 62a of the Courts of Civil Appeals (149 S. W. x).

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. ☞1064.]

3. EVIDENCE ☞274—OWNER'S DECLARATION
AS TO BOUNDARY.

In a suit to determine a boundary, testimony of plaintiff's predecessor in title that, when he sold to plaintiff's grantor, the fence, which the plaintiff claimed was the agreed boundary, was pointed out by the witness as the boundary line between his and defendant's land, which declaration was made in the absence of defendant and his predecessor in title, was inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1121–1134; Dec. Dig. ☞274.]

4. EVIDENCE ☞114—EXCLUSION BY AGREE-
MENT.

In a suit to determine a boundary, where it was agreed that the only issue was whether the parties' predecessors had made an agreement as to the boundary line, the exclusion of evidence that plaintiff's predecessor, when he sold to plaintiff's grantor, pointed out the fence on the line contended for by plaintiff as the boundary, was proper.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 125–132; Dec. Dig. ☞114.]

Appeal from District Court, Reagan County; J. W. Timmins, Judge.

Suit by J. A. Talley against A. E. Bailey. Judgment for defendant, and plaintiff appeals. Affirmed.

Blanks, Collins & Jackson, of San Angelo, for appellant. Wright & Harris, of San Angelo, for appellee.

WALTHALL, J. This is a boundary line suit brought by appellant against appellee, in the form of trespass to try title, and involves the question as to the boundary line between section 6, Gulf, Colorado & Santa Fé Railway Company's survey and section 1209, D. & S. E. Railway Company's survey in Reagan county, Tex. The cause was tried under a stipulation to the effect that each party to the suit had title to his respective section of land, and that the only issue of fact for determination was whether or not an agreed boundary line as contended for by appellant had been established between said two surveys, and the only issue of law, whether or not such agreement, if any, was binding upon appellee. The line contended for by appellee was conceded by appellant to be correct upon the ground, unless the line as contended for by appellant had been agreed upon as the boundary line between prior owners of said surveys and such agreement was binding upon the appellee. The cause was submitted to a jury, which returned a verdict for appellee, upon which the court rendered judgment.

Appellant's first assignment of error is directed to a special charge given.

The court prepared and submitted to counsel the following general charge:

"By virtue of the agreement between the parties to this suit, there is but one issue for your determination, and that is: Did W. H. Funk and G. F. Banowsky, while the owners of section 6, Gulf, Colorado & Santa Fé Railway Company and section 1209, D. & S. E. Railway Company, respectively, agree upon the boundary line between said surveys, as alleged in plaintiff's petition? If you find from the evidence that while the said W. H. Funk was the owner and in possession of survey 6, Gulf, Colorado & Santa Fé Railway Company and the said G. F. Banowsky was the owner and in possession of section 1209, D. & S. E. Railway Company, that they agreed upon a boundary line between said surveys as alleged in plaintiff's petition, and you further find that, in pursuance of such agreement, if any you find was made, they erected and maintained their fence thereon, and that the fence was on said line, and the plaintiff or those under whom he claims were in possession of the lands on the east side thereof at the time defendant bought his land, then you will find for the plaintiff. To constitute an agreement, the minds of the parties must meet and there must be a mutual understanding. If you find from the evidence that, in constructing the fence between their respective possessions, the said Funk or Banowsky did not intend thereby to fix or locate the boundary line between them, or that said fence was built for temporary purposes, or until the true line could be ascertained, then I charge you that you should find for the defendant.

"If you find that a valid agreement was made between the said Funk and Banowsky as hereinabove charged, and that such agreement was acted upon by the mutual construction of a fence on the line agreed upon, and that said fence was being maintained on the line at the time the defendant A. E. Bailey bought his land, then I charge you that said fence line, if any, was notice to the said A. E. Bailey of all rights claimed by the plaintiff and those under whom he claims on the east side thereof, and that it is not necessary for the plaintiff to show further notice. I further charge you that, if you find an

agreement was made between the said Funk and Banowsky as charged in the first paragraph hereof, such agreement would be binding upon them and their assigns whether the line agreed upon between them, if any, was correct or not, and the true location of the correct line would not be material."

Appellee presented to the court the following special charge, which was given:

"You are charged that, in order to constitute an agreed boundary line between the owners of adjacent lands, the minds of both parties must meet as to the agreement, and in this case, if you believe from a preponderance of the evidence that W. H. Funk and G. F. Banowsky agreed that they would accept the line when they built the fence in the year 1905, as a permanent boundary between the surveys Nos. 1209, and 6, then you will find for the plaintiff. But if you find that said parties did not agree that said line upon which said fence was built was to be the permanent boundary line between said surveys, or that said fence was agreed to be built and maintained only until the true boundary line was discovered, then you will find for the defendant. And in this connection you are charged that the minds of both parties to a contract must meet and agree to the terms of the alleged contract. Therefore you are charged that both W. H. Funk and G. F. Banowsky must have agreed to establish a boundary line permanent in its nature, before plaintiff can recover in this case."

Appellant's first four propositions under this assignment are to the effect that, where the general charge of the court fully presents an issue to the jury, it is error to unduly emphasize the issue, and thereby give undue prominence to it by a special charge to the exclusion of other issues. That having clearly charged the jury that, if "the said Funk and Banowsky did not intend thereby (meaning by the construction of the fence) to fix or locate the boundary line between them, or that said fence was built for temporary purposes, and until a true line could be ascertained," the jury should find for defendant, it was error to again specially reiterate the same proposition. That the special charge, in view of the general charge given, puts too much emphasis on and gives undue prominence to the word "permanent." It is further insisted that the special charge is affirmatively wrong in substance, in that if the line was agreed upon as a boundary line, and a fence built thereon by the action of the both parties, said line became "permanent" as a matter of law, and it was not necessary that the parties affirmatively agree that it was permanent in order to make it so. The fifth proposition under the assignment is not germane to the assignment and cannot be considered.

[1] The evidence in this case is too lengthy to quote in this opinion, and we refer to it in considering this assignment only for the purpose of disclosing the exact point at issue. In 1903 and prior to any of the facts pleaded in this case, W. H. Funk owned section No. 6, and G. F. Banowsky owned section No. 1209. The boundary line between these two sections was in dispute between the respective owners. At that time there was a fence on the ground between the surveys about 100 varas west of the boundary now claimed by appellant. Appellant's contention is that while Funk and Banowsky were still the owners and in possession of said respective surveys, for the purpose of settling all differences and misunderstandings between them as to the correct and proper location of said boundary line between said two surveys, Funk and Banowsky agreed upon the line contended for by him in his petition as the west boundary line of section 6 and the east boundary line of section 1209, and that they thereupon, in furtherance of said agreement, removed the fence and established a boundary line fence between said two sections upon said location. That subsequent to the settlement of said boundary line, Banowsky sold and delivered the title and possession of said survey 1209 to appellee, Bailey, who had notice of said agreement and the location of said line; and that Funk sold section 6 to Wilkie, and Wilkie sold to appellant; that thereafter Bailey constructed a parallel line of fence on the east side and some 250 feet east of the alleged agreed line on a survey made by H. M. Garden. The contention made by appellee is that when his predecessor, Banowsky, acquired section 1209, there was an old fence that separated the two properties. Soon after Banowsky bought section 1209, Garden ran a line to locate the correct boundary line. The Garden line was some 250 yards east of the old fence line. John Gardner, who owned some land north of 1209, spoke of some old rock corners between the old fence and the Garden line; that while Banowsky did agree with Funk to remove the old fence line and place it on the land at the rock corners and between where the old fence was and the line run by Garden, Banowsky never did agree with Funk to move it there as the permanent boundary line, but that it was put there for the purpose of blocking their respective pastures, as Banowsky owned seven or eight sections of land and Funk owned nine or ten sections, and that both parties knew that the old fence line was too far west and on Banowsky's land, and Funk was not willing to move it to the Garden line; that nothing was said at the time the agreement was made, or when the fence was moved, that it was to be a permanent line between the surveys; that when he bought of Banowsky he was not told that the fence built by Banowsky and Funk was the agreed boundary line between the surveys. The only point of difference developed by the evidence between the two contentions is whether the line agreed upon between Banowsky and Funk on which they would and did put the division fence was to be an agreed boundary line between the two properties, or whether it was to serve as a blocking line without reference to its permanency or its being the true or correct line. The general charge of the court instructed the jury as to what was necessary to constitute "an agreement," while the special charge objected to made the agree-

ment have reference to the concrete point of difference, "agreed boundary line between the owners of adjacent lands."

The point of difference in the contentions between appellant and appellee made by the evidence, we think, permitted a more specific statement of the issues than was made in the general charge, and we do not think that by giving the special charge undue prominence was given the issue.

[2] But if the giving of the special charge was repetition of the main charge, it would not be such error as amounted to such a denial of the rights of appellant as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case, and on account thereof require or justify a reversal of the case under Rule 62a (149 S. W. x). Englefield v. International & G. N. Ry. Co., 159 S. W. 1033.

Appellant's second assignment and the proposition thereunder is to the effect that the verdict of the jury is contrary to the weight of the evidence and is without evidence to support it. A review of the evidence discloses that it is not without evidence. Banowsky's testimony is to the effect that he made no agreement with Funk that the line on which they put the fence should be the boundary line except for blocking purpose, and the fact that the old fence line was practically admitted to be not on the correct division line between the two properties, and that both Funk and Banowsky each had other sections adjoining the two in controversy more or less effected by the old fence line, possibly suggested to the jury that the line adopted by them was a temporary rather than permanent boundary line. Funk's evidence is to the effect that it was not understood between him and Banowsky that the place they put the fence was temporary, and that nothing was said about the fence being built for the purpose of blocking their lands, yet there is no statement in his evidence to the effect that he and Banowsky agreed that the line on which they built the fence should be the division line between the two properties. They simply agreed to move the fence from the old fence line and to put it where they did. We think the verdict is not without evidence to support it.

[3] The third and fourth assignments suggest error in the exclusion of the offered testimony of Funk and Talley that when he (Funk) sold to Wilkie, and when Wilkie sold to Talley, the fence was pointed out by the vendor as the boundary line between the two surveys.

[4] Appellant refers us to no case sustaining his contention, and we have found none. In this suit between appellant, Talley, and Bailey, it seems to us that declarations by Funk and Wilkie, the vendors, as to the boundary line, in the absence of Banowsky and Bailey, would not be admissible. Again, the agreement between appellant and appel-

lee that the only issue of fact for determination was as to whether Funk and Banowsky had made an agreement as to the boundary line would properly exclude the offered evidence. The issue made by the agreement would not involve the question as to the true boundary line, but the only issue tendered under the agreement was: Did Funk and Banowsky agree that the fence pointed out was the boundary?

There was no error in excluding the evidence.

The case is affirmed.

HIGGINS, J. (concurring). I am of opinion the special charge was an unnecessary repetition of the general charge and gave undue prominence to defendant's theory of the case, and should not have been given. But, in view of Rule 62a, I am not prepared to hold that it constitutes reversible error, and therefore concur in the affirmance of the case.